**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DORA MOORE-ALLEN, Plaintiff | : | CIVIL ACTION |
| v. | : | |
| | : | |
| ANDREW SAUL, Commissioner of the Social Security Administration, Defendant | : | NO. 20-2696 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE June 7, 2021

Dora Moore-Allen ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of her request for review; the Commissioner has responded to it. For the reasons set forth below, Plaintiff's request for review is denied and judgment is entered in favor of the Commissioner.

## I. PROCEDURAL HISTORY[1]

On October 19, 2017, Plaintiff applied for DIB benefits, alleging that disability began November 1, 2014. R. 15; Pl. Br. at 1. On January 4, 2018, the Social Security Administration ("SSA") denied Plaintiff's claim; therefore, she requested a hearing before an Administrative Law Judge ("ALJ"). R. 15; Pl. Br. at 1. The SSA granted Plaintiff's request and convened a hearing on December 20, 2018, adjourned it until Plaintiff obtained counsel, then, held a hearing on April 9, 2019. R. 15, 55-61; Pl. Br. at 1.

[1] The Court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Motion for Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), the administrative record ("R."), and Exhibits (Ex.).

Plaintiff, from Philadelphia, Pennsylvania, and represented by an attorney, attended a video hearing before ALJ Bettye L. Rutledge, in Jacksonville, Florida; Plaintiff and a vocational expert, Lanell R. Hall ("the VE"), testified at the hearing. R. 15, 35. On May 2, 2019, the ALJ, using the sequential evaluation process for disability[2], issued an unfavorable DIB decision. R. 15-27. Thereafter, on April 7, 2020, the Appeals Counsel denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final determination. R. 1-4, Pl. Br. at 2. On June 9, 2020, Plaintiff sought judicial review from this Court. Both parties have consented to the undersigned's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

### A. Personal History

Plaintiff, born September 19, 1969, was 49 years old on the date of her administrative hearing. R. 51; Pl. Br. at 2. She obtained her high school diploma, completed specialized job training, served in the military, and earned a certificate in cosmetology. R. 165. Plaintiff is divorced and lives in Darby, Pennsylvania, near her daughter and grandchild. R. 40.

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

From 1987 until 1993, Plaintiff was a solider, deployed in the Middle East[3]. R. 83, 183. Upon completion of her military service, she returned home and worked at the U.S. Postal service[4] until 1998. R. 183. From 2004 until 2014, Plaintiff worked as a beautician and hairdresser. R. 41, 165, 183. She initially worked for Premier Salon in Springfield, Pennsylvania, until 2008, at which point she became self-employed. R. 41.

B. Plaintiff's Testimony

Plaintiff testified, and her attorney clarified, about her impairments at the April 9, 2019 hearing. R. 39-49. Plaintiff's counsel first asserted that, although Plaintiff suffers from both anxiety and post-traumatic stress disorder ("PTSD"), she meets the listing for anxiety rather than PTSD. R. 38-39. She treated with a psychologist in the Department of Veterans Affairs ("VA") Medical Center in Philadelphia. R. 42-43. Both Plaintiff and her attorney informed the ALJ that, on March 11, 2019, her VA disability status worsened from 70% disabled to 100 %. R. 39, 43, 232.

Plaintiff testified that, because of her impairments, she is unable to remain focused, feels overwhelmed, and experiences mental breakdowns. R.42. Specifically, she stopped working as a beautician because of these breakdowns. *Id*. She further testified that this full-time position required her to stand all day. *Id*.

Notwithstanding the limitations described above, Plaintiff testified that she could drive for approximately forty minutes, from Darby, Pennsylvania, to New Castle, Delaware, to visit her sister. R.40-41. She watches her grandchild, albeit, not alone, because of her inability to focus.

---

[3] During her service, Plaintiff was stationed in Dhahran, Saudi Arabia at the Khobar Towers. She was on patrol when the Khobar Towers were bombed, killing 350 service members and civilians. Staff Sgt. Christopher Gross, Air Force News Service, *20 Year Later: Remembering the Attack on Khobar Towers* https://www.af.mil/News/Article-Display/Article/811370/20-years-later-remembering-the-attack-on-khobar-towers/%201/ (last visited May 21, 2021). Plaintiff alleges that this event triggered the onset of her disabilities. R. 38-39.

[4] Plaintiff did not testify about this position and the ALJ did not ask the VE to give the DOT, SVP, and exertional level.

R. 43-44.

Plaintiff's typical day consists of waking up in the morning or the afternoon, eating meals her daughter prepares for her, and walking or watching television. R. 45. She cleans her house and washes dishes and clothes; however, Plaintiff becomes overwhelmed by too much housework. Finally, she testified that her mental health issues contributed to her divorce and problems with her daughter. R. 48.

C. Vocational Testimony

At the administrative hearing, VE Hall classified Plaintiff's cosmetology positions as skilled[5], at a light[6] exertional level, with an SVP of 6. R. 50. The ALJ asked the VE a hypothetical question that considered a person of Plaintiff's age, education, and work history, who was limited to: simple, routine tasks and work-related decisions, and a low-stress work environment that required no decisions or judgments to be made on any executive, managerial or personnel matters. R. 51-52. The ALJ further specified that the individual would only occasionally interact with supervisors, coworkers, and the public. R. 52.

The VE stated that such an individual would not be able to perform Plaintiff's past relevant work, because her past skilled work. R. 52. The VE identified three jobs, in the national economy, at medium[7] level of exertion, with an SVP of 2: (1) laundry laborer (55,000 positions nationally); (2) store laborer (320,000 positions nationally); and (3) kitchen helper (540,000 positions

[5] "Skilled work requires qualification in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced." 20 C.F.R. § 404.1568(c).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1657(c).

nationally). R. 52.

Next, the ALJ asked the VE whether that individual would be able to perform any work in the national economy if they were off task more than 20% of the day and would miss more than two days of work per month. R. 52. The VE answered that either one of those additional restrictions alone would preclude an individual from maintaining gainful employment. *Id*. Although the VE did not confirm that her testimony was consistent with the Dictionary of Occupational Titles, she stated that her testimony regarding off task time and absenteeism was based on her experience and employer surveys, found on the Bureau of Labor Statistics website. *Id*.

## III. THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

> 1. The [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of November 1, 2014 through her date last insured of December 31, 2015 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the [Plaintiff] had the following severe impairments: post-traumatic stress disorder ("PTSD"), major depressive disorder, and anxiety disorder (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations. The [Plaintiff] is limited to the performance of simple, routine tasks and

simple work-related decisions. She is limited to a low stress environment, defined as requiring no decisions or judgments to be made on executive, managerial, fiscal, or personnel matters. She can occasionally interact with supervisors, coworkers, and the public.

6. Through the date last insured, the [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).

7. The [Plaintiff] was born on September 19, 1969 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability[,] because using the Medical-Vocational rules as a framework supports a finding that the [Plaintiff] is "not disabled," whether or not the [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [Plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).

11. The [Plaintiff] has not been under a disability, as defined in the Social Security Act, from November 1, 2014, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(g)).

R. 17-18, 20, 25-27.

## IV. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*,

181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). It is more than a mere scintilla of evidence but may amount to less than an evidentiary preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B. Burden of Proof in Disability Proceeding

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially

demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff is capable of performing given her age, education, work experience and residual functional capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C. Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined, pursuant to 20 C.F.R. §§§ 404.1520(d), 404.1525, and 404.1526, that Plaintiff does not have an impairment or combination of impairments that meet or equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. 18. After considering her mental impairments singly and in combination, the ALJ determined that, although Plaintiff was unable to perform any past relevant work, there were jobs in the national economy that she could perform. R. 18, 26. Finally, the ALJ determined that it was not necessary to determine whether Plaintiff possessed transferable skills, because, using the Medical-Vocational Rules as a framework for decision-making, supported a finding that Plaintiff is not disabled. R. 26.

Plaintiff asserts that the ALJ failed to: (1) afford Plaintiff's subjective complaints great weight, as there was no medical evidence to refute them; (2) consider the entire record in that she selectively used parts of it to support her conclusion; and (3) properly credit Plaintiff's treating psychiatrist's opinion. Pl. Br. 3, 14, 15. The Commissioner disputes Plaintiff's arguments and maintains that the ALJ's decision is supported by substantial evidence. Resp. at 3-13.

This Court finds that the ALJ did not commit error and that her decision is supported by substantial evidence. The ALJ properly evaluated Plaintiff's subjective complaints against the

weight of the medical evidence, considered the entire record, and properly credited Plaintiff's treating psychiatrist's opinion. Hence, remand is not appropriate.

1. The ALJ Properly Considered Plaintiff's Subjective Complaints

Plaintiff argues that, although she suffers from PTSD, anxiety, and depression, the ALJ used boilerplate language when she assessed Plaintiff's subjective complaints, instead of thoroughly examining the record. Pl. Br. at 4. She asserts that the ALJ improperly dismissed her treatment as "routine and conservative," and failed to cite any medical experts. Pl. at 6. Plaintiff also contends that the ALJ ignored records that show she suffered from nightmares and withdrew from school. Pl. Br. at 6-7. Finally, Plaintiff argues that she and her psychiatrist, Dr. Choi, provided several explanations for the gaps in Plaintiff's treatment and that the ALJ cannot simply ignore evidence that does not support her conclusion. Pl. Br. at 9-10.

The ALJ is required to review all relevant evidence and, if there is substantial evidence to sustain her factual determinations, this Court must accept those fact-findings. *See Poulos,* 474 F.3d at 91. Substantial evidence is less than a preponderance. *See Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Here, the ALJ thoroughly reviewed the medical record and explained how she assessed Plaintiff's subjective complaints. First, the ALJ considered Plaintiff's impairments singly and cumulatively as she reviewed the medical record and Plaintiff's testimony. R. 18, 21. Plaintiff testified that she was able to perform simple household chores, prepare simple meals, drive to and from doctor's appointments, stores, and her sister's house. R. 19 (citing Exhibits 1E, 4E, and 5E). Moreover, the ALJ explained that Plaintiff could follow instructions, complete tasks, and take care of personal needs without reminders. R. 19.

Second, the ALJ cited objective medical evidence that showed Plaintiff had no significant problems getting along with providers, with controlling her temper, or any abnormalities in her

thought processes and content. R. 19 (citing Exhibits 4F). The ALJ discussed medical evidence that further showed that Plaintiff's mood, affect, insight and judgment were "adequate." *Id*.

Third, the ALJ properly considered the Plaintiff's subjective complaints, because Plaintiff's treatment records from the VA showed that Plaintiff had eight[8] therapy sessions, four of which were during the relevant period. R. 21 (citing Exhibits 1F, 2F, and 4F). The ALJ noted that the records indicated that the Plaintiff's mental status examinations "were largely unremarkable." R. 21 (citing Exhibit 4F). Dr. Choi noted that, although Plaintiff was depressed and anxious, she was neatly dressed, exhibited appropriate affect, normal thought processes and content, with "no signs of auditory hallucinations or delusions." R. 22. Additionally, Plaintiff informed Dr. Choi that she wished to taper off her mental health medications, because her symptoms had improved. R. 22, 24. The ALJ noted that the VA raised Plaintiff's disability rating from 70% to 100%, but, stated that the medical evidence did not reflect an increase in Plaintiff's symptoms or a deterioration of her mental status on examinations. R. 24 (citing Exhibit 4F).

Finally, the ALJ addressed each of Plaintiff's subjective complaints in relation to the objective medical record, noting that the record did not support Plaintiff's assertion of complete disability. R. 20-25. Plaintiff flew to Florida in January of 2017 to pick up her six-month granddaughter, brought her back to Pennsylvania, and served as a caregiver for two weeks. R. 250. The following month, Plaintiff stated she was feeling better and was excited to plan another visit to Florida to see her daughter and granddaughter. R. 247. Thus, Plaintiff was able to travel on her own to and from Florida, assist her daughter, and care for an infant.

Hence, the ALJ's opinion, that appropriately considered Plaintiff's subjective complaints, is supported by substantial evidence, and should be affirmed.

---

[8] Plaintiff visited the VA four times in 2004, twice 2016 and twice in 2014. R. 21.

2. The ALJ Properly Considered the Entire Record

Plaintiff's second argument asserts that the ALJ erred when she cherry-picked portions of the record to support her conclusion. Pl. Br. at 14. This argument fails, because, as stated above, the ALJ analyzed all the evidence and sufficiently explained her conclusion.

The ALJ repeatedly stated in her decision that she considered the entire record. R. 17, 18, 20. She discussed medical history that was favorable to the Plaintiff, but, contrasted it with other reports in the record. For example, Plaintiff testified that she had difficulty getting along with others and the record indicated that she suffered from social isolation and irritability, R. 19 (citing Exabits 4F and 5E). However, the ALJ cited other medical evidence that indicated Plaintiff exhibited a good rapport with providers, was described as pleasant and cooperative, and overall, was capable of socially appropriate behavior. R. 19.

Another instance of the ALJ contrasting evidence Plaintiff relied upon with other sources was when the ALJ discussed Plaintiff's ability to concentrate, persist or maintain pace. The ALJ contrasted medical evidence that Plaintiff reported problems with intrusive memories and difficulty concentrating, with Plaintiff's testimony and evidence that showed she was able to drive, prepare meals, manage funds. R. 19 (citing Exhibit 5E). Moreover, the ALJ cited Exhibit 4F to show that Plaintiff's mental examinations "during the relevant period show[ed] no significant abnormalities in [her] thought processes and content." R. 19. Finally, the decision contains multiple examples similar to the ones described above; thus, the ALJ's decision is supported by substantial evidence, was appropriately considered given the entire record, and should be affirmed.

3. The ALJ Properly Credited Plaintiff's Treating Psychiatrist's Opinion

Plaintiff contends that the ALJ should have afforded Dr. Choi's opinion greater weight than she did. Pl. Br. at 15. Plaintiff asserts that the ALJ was encouraged to make "lay perceptions"

based on the supportability and consistency of the medical opinions under the new regulations the Administration adopted. Pl. Br. at 23. Plaintiff argues that the revised regulations conflict with provisions of the Social Security Act. Pl. Br. at 22. Specifically, Plaintiff cites Third Circuit case law to argue that the ALJ's explanation must be "sufficient enough" to permit judicial review in a meaningful way and that the new regulations foreclose that from happening. Pl. Br. at 22-23.

Plaintiff also asserts that, by telling ALJs that they do not need to articulate some of the reasons for the weight they give medical opinions, it makes it easier for ALJs to write decisions. Pl. Br. at 23; Reply at 3. Finally, Plaintiff contends that this Court cannot make a proper determination as to whether the ALJ was "playing doctor," because the ALJ did not articulate her reasoning. Pl. Br. at 24.

The Commissioner counters that, because this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. Resp. at 7. Defendant argues the agency "has more clearly" defined a "medical opinion"[9] and changed how ALJs consider such evidence. Resp. at 8. Defendant asserts that the ALJ appropriately considered Dr. Choi's opinion, because the ALJ was required to consider the persuasiveness of medical opinion under the new regulations, and that the source of the opinion is not the most important factor in evaluating its persuasive value. Resp. at 9 (citing 20 C.F.R. § 404.1520c(b)(2)). Moreover, the Defendant contends that the ALJ was required to consider supportability and consistency, which she appropriately did. Resp. at 9.

The Commissioner argues that Plaintiff's assertion that the revised regulations conflict with

[9] Medical Opinions are "statements from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" to perform physical, mental, or other demands of work activity. 20 C.F.R. § 404.1513(a)(2)(2017).

the Act's provision is meritless, because the Act does not specify how the Agency should evaluate treating medical source's evidence; rather, pursuant to 42 U.S.C. § 405(a), Congress gave the Agency the authority to specify how such evidence should be evaluated. Resp. at 11-12. Moreover, Defendant counters that this Court will be sufficiently informed of the ALJ's decision's reasoning, even if it only focuses on two factors, because the Agency "explained that the new regulations set forth 'what minimal level of articulation we will provide in our determinations and decisions to provide sufficient rationale for a reviewing adjudicator or court." Resp. at 12-13 (*citing* 82 Fed. Reg. at 5,857-58 (rejecting concern that ALJS "would no longer provide rationale about why [they] did not adopt a medical opinion from an individual's doctor").

Before this Court can consider whether the ALJ properly applied the new regulations, we must first address Plaintiff's argument that the new regulations conflict with the Act. This Court finds that the regulation is valid and binding. The United States Supreme Court has held that "if the statute speaks clearly 'to the precise question at issue [courts] must give effect to the unambiguously expressed intent of Congress.'" *Barnhart v. Walton*, 535 U.S. 212, 217-18 (2002). "If, however, the statute 'is silent or ambiguous with respect to the specific issue,' [courts] must sustain the Agency's interpretation if it is 'based on a permissible construction' of the Act." *Id*. at 418 (*citing Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843 (1984).

Here, the statue does not unambiguously forbid the regulation. 42 U.S.C. § 405(g) is silent as regards to treating physicians, medical opinions, or medical evidence. Instead, Congress granted the Commissioner broad rule-making authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions. 42 U.S.C. § 405(a); *see also Barnhart*, 535 U.S. at 225 ("The statute's complexity, the vast number of claims that it engenders, and the consequent need for agency expertise and administrative experience lead

us to read the statue as delegating to the Agency considerable authority to fill in…matters of detail related to its administration.”). When an agency is given such authority, its policies are not “carved in stone.” *Chevron*, 467 U.S. at 863-64.

Moreover, the Agency can change its policy, specifically, concerning evaluation of evidence, even if the new regulations conflict with prior judicial precedent; a court's “prior construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court's decision holds that its construction follows from the unambiguous terms of the statute and this leaves no room for agency discretion.” *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005). Because the Act is silent as to evaluation of medical evidence, the Agency can create regulations. *See Barnhart*, 535 U.S. at 217-18. Thus, the new regulations are consistent with the Act.

Under the revised regulations, an ALJ “will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)…” 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id*. at § 404.1520c(c). Supportability and consistency are the most important factors, and therefore, the ALJ must explain how he or she considered those factors. *Id*. at § 404.1520c(b)(2). The ALJ may, but is not required to, explain how they considered the other factors. *Id*.

Here, the ALJ appropriately considered Dr. Choi's medical opinions and the relevant

factors of supportability and consistency with the balance of the medical record. The ALJ thoroughly explained why she found Dr. Choi's letters unpersuasive. R. 25. First, the ALJ noted that the doctor's letter merely reported the existence of symptoms attributable to the Plaintiff's impairments but did not indicate any specific functional limitations and diagnostic tests results that would have proved Plaintiff's impairments met or equaled the criteria of any specific listing. *Id*. Second, the ALJ stated, citing Exhibits 1F, 2F, 4F-6F, that there were no findings in the medical evidence that would indicate or suggest any specific functional limitations. R. 25. Finally, the ALJ's decision found that Dr. Choi's letter was unsupported or inconsistent with Plaintiff's minimal psychological clinical examination findings, coupled with the Plaintiff's limited routine and conservative treatment record. *Id*. Accordingly, this Court finds that substantial evidence supports the ALJ's decision to find Dr. Choi's opinion unpersuasive in light of the supportability and consistency factors.

## V. CONCLUSION

Review of the relevant law and the record indicate that Plaintiff's assertions of error lack merit. Accordingly, her Request for Review is denied. An implementing Order and Order of Judgment follow.